SOVEREIGN CAMP WOODMEN OF THE WORLD v. LAKE WORTH INLET DISTRICT of Palm Beach County.

161 So. 717.
Opinion Filed May 16, 1935.
Rehearing Denied June 14, 1935.

*L. O. Casey,* for Appellant, District, H. R. Corwin, L. R. Bishop and W. A. Weihe, as Commissioners thereof;

*W. Terry Gibson,* Representing Appellees (Defendants below), Lake Worth Inlet;

*Winters, Foskett & Wilcox,* Representing W. H. Lippincott, Appellee (Intervening Defendant below);

*Clark & Willis* and *Loftin, Stokes & Calkins,* Representing Appellee, Palm Beach Company (Intervening Defendant below).

DAVIS, J.—The bill in this cause, filed against the Lake Worth Inlet District, as a taxing district, the Board of Commissioners thereof, and the individual members of the board, as individuals, alleges that the Legislature of the State of Florida, by Chapter 7081, Laws of Florida, Acts of 1915, created a special taxing district known as Lake Worth Inlet District, for the purpose of constructing and maintaining an inlet or passage connecting the waters of Lake Worth with the Atlantic Ocean, delegating the management of its affairs to a Board of Commissioners, which board was incorporated under the name, "Board of Commissioners of Lake Worth Inlet District."

Said board was authorized to issue bonds in the amount of $350,000.00, for the payment of which with interest, it was authorized to levy an annual tax of five (5) mills upon all the taxable property within said district. To secure the payment of said bonds with interest, said board was required, out of the proceeds of said taxes and out of any other money coming into its possession, to set apart so much as was necessary to pay the semi-annual interest as it fell due and to build up a sinking fund sufficient to pay the principal at maturity for which purpose said statute

set apart and appropriated so much of the revenue of the district as was required for the purpose.

To provide for the payment of the principal at maturity, the statute created a sinking fund, to be under the management and control of said board, into which sinking fund the board was required to pay annually out of taxes and other revenue at least two (2%) per centum of the bonds outstanding, which sinking fund was appropriated to payment of the principal of the bonds, the statute further providing that it should not be appropriated or used for any purpose other than that specified.

Sections 10, 16 and 17 of Chapter 7081, Laws of Florida, Acts of 1915, are as follows:

"Sec. 10. That said Board is authorized and empowered to borrow money on permanent loans and to incur obligations from time to time on such terms and at such rates of interest as they may deem proper, not exceeding seven per cent. per annum, for the purpose of raising funds to construct, continue and prosecute to completion the canals, waterways, inlets and other works authorized by this Act or which said Board may deem advantageous to the territory embraced in said District or within the purposes and scope of this Act, and to pay the expenses incident to all such work or any other expenses necessary in carrying out the general purposes of this Act. And, the better to enable said Board to borrow money for the purposes aforesaid, it is hereby authorized to issue in the coporate name of said Board negotiable coupon bonds of said 'Board of Commissioners of Lake Worth Inlet District,' not exceeding in the aggregate the total amount of $350,000.00 to be outstanding at any one time. No such bond shall be issued having a longer maturity than thirty years from the date thereof."

"Sec. 16.   This Act shall without reference to any other Act of the Legislature of Florida be full authority for the issuance and the sale of the bonds in this Act authorized, which bonds shall have all the qualities of negotiable paper under the law merchant, and shall not be invalid for any irregularity or defect in the proceedings for the issue and sale thereof, and shall be incontestable in the hands of *bona fide* purchasers for value.   No proceedings in respect to the issuance of any such bonds shall be necessary except such as are required by this Act.   The provisions of this Act shall constitute an irrepealable contract between said Board, and the holders of any such bonds and coupons thereof issued pursuant to the provisions thereof.   Any holder of said bonds or coupons may, either at law or in equity, by suit, action or mandamus, enforce and compel the performance of any of the duties required by this Act of any of the officers or persons mentioned herein in relation to said bonds or the collection, enforcement, and application of the taxes for the payment thereof."

"Sec. 17.   It shall be the duty of said Board out of the proceeds of the taxes levied and imposed by this Act and out of any other moneys in the possession of said Board, which moneys so far as necessary are hereby set apart and appropriated for the purpose, to apply said moneys and pay the interest on said bonds as the same fall due, and at the maturity of said bonds out of said moneys to pay the principal thereof; and there shall be and is hereby created a sinking fund for the payment of the principal of said bonds, and said Board shall set apart and pay into such sinking fund annually, out of the taxes levied and imposed under this Act and any other revenues and funds of said District, at least two per cent. of the amount of bonds outstanding. Said sinking fund for the payment of the principal of said

bonds shall not be appropriated to any other purpose than that herein specified."

The bill further alleges that under and pursuant to said Chapter 7081, Acts 1915, as amended by Chapter 7522, Acts 1917, the Board of Commissioners of Lake Worth Inlet District resolved to issue and did issue, sell and deliver its negotiable coupon bonds in one series of $350,000.00 of bonds dated July 1, 1916, which issue was validated and approved pursuant to law by a decree of the Circuit Court of the Fifteenth Judicial Circuit of the State of Florida in a proceeding instituted by the Board of Commissioners of said Lake Worth Inlet District. That subsequently no appeal from said decree was taken in said cause, in consequence of which the validation decree became a final and binding one. See Sections 5106-5128 C. G. L., 3296-3302 R. G. S., Chapter 10036, Acts 1925, Chapters 12003 and 12066, Acts 1927.

Chapter 7081, Acts of 1915, as amended by Chapter 7522, Acts 1917, was further amended by Chapter 8800, Acts of 1921, so as to authorize the issue of $250,000.00 of bonds, and thereafter Chapter 9993, Acts of 1923, was passed, authorizing the issuance of further bonds, the total not to exceed $1,000,000.00. By Chapter 10756, Acts of 1925, the District was authorized to issue negotiable coupon bonds not to exceed the total aggregate of $3,250,000.00, exclusive of and in addition to the bonds of the District then outstanding.

It is further alleged in the bill that complainant below (appellant here) Sovereign Camp Woodmen of the World, believing that said bond issue of July 1, 1916, in the amount of $350,000.00 was and would be the only bonds or series of bonds issued, offered or sold for said improvement, or by Lake Worth Inlet District of Palm Beach County, Flor-

ida, and having right to so believe, and relying upon the terms and provisions of Chapter 7081, Acts of 1915, as amended by Chapter 7522, Acts of 1917, for a valuable consideration, before maturity thereof, and without notice of any defect or infirmities therein or defense thereto, acquired by purchase certain of the July 1, 1916, issue of bonds and thereupon became and was still the holder of the same; that the subsequent Acts of the Legislature authorizing an increase in the total outstanding debt of the Lake Worth Inlet District had become a law without the knowledge or consent of the complainant; that under the statute of 1915 as amended by the statute of 1917, complainant, as the holder of bonds of the first dated bond issue of $350,000.00 had acquired a superior and paramount lien on the revenues of the District, which revenues, so it is alleged, were in the nature of a special trust fund raised by taxation for complainant's benefit; that the said Commissioners of Lake Worth Inlet District had not made provision for meeting the requirements of complainant's bonds in full before disposing of any moneys of the District for the requirements of subsequently issued bonds and other obligations, wherefore an injunction was prayed to require the defendants to apply out of any and all cash on hand, so much thereof as might be necessary to pay to complainant the principal of its matured bonds and matured interest coupons, and that defendants be required to pay the complainant said sums as the cash might be available to make such payment.

The Chancellor denied the injunction and dismissed the bill on motion of the defendants and certain intervenors, hence this appeal.

So the question to be decided is whether or not Chapter 7081, Acts of 1915, as amended by Chapter 7522, Acts of 1917, gives to the holders of the $350,000.00 first issue of

bonds of the Lake Worth Inlet District issued thereunder, a paramount lien and claim upon all of the revenues raised by special levies in said District, prior and superior to the claim of other bondholders arising under the bonds of the district subsequently authorized and issued. We answer this question, as did the Chancellor, in the negative and for the following reasons:

While the tax levies authorized for Lake Worth Inlet District are special assessments for benefits levied in the form of taxes computed on an *ad valorem* basis, which manner of levy does not alter or destroy their character as such (Richardson v. Hardee, 85 Fla. 810, 96 Sou. Rep. 290; Martin v. Dade Muck Land Co., 95 Fla. 530, 116 Sou. Rep. 449; Lainhart v. Catts, 73 Fla. 735, 75 Sou. Rep. 47), they are nonetheless special assessments for unapportioned benefits that are common and general to the Lake Worth Inlet District as a whole (Jinkins v. Entzminger, 102 Fla. 167, 135 Sou. Rep. 785). Therefore while limited to the aggregate value or total amount of the special district benefits conferred on properties situate in the District (Moran v. State, *ex rel.* Montgomery, 111 Fla. 429, 149 Sou. Rep. 477), such ultimate limitation has reference to the total of the benefits that may be lawfully assessed as the resulting unapportioned benefit common and general to all of the property in the District considered as a whole, rather than to the benefits specially apportionable to the individual parcels of property therein situated, as was the case in Moran v. State, *ex rel.* Montgomery, *supra.*

By Chapter 7081, Acts of 1915, as amended by Chapter 7522, Acts of 1917, the Lake Worth Inlet District was authorized to issue in the corporate name of the Board, negotiable coupon bonds of the District not exceeding in the aggregate the total amount of $350,000.00 *to be outstanding*

*at any one time.* But only the taxes levied and imposed under these Acts were pledged to be paid annually into the sinking fund covenanted to be created and maintained for the payment of the principal of said bonds.

There was no pledge or covenant on the part of the Legislature in either the 1915 or the 1917 Acts that future Legislatures would not increase the total authorized debt of the Lake Worth Inlet District by providing for and authorizing additional taxation to pay) an increase in the District's total debt from time to time. And, indeed, any such pledge on the part of the Legislatures of 1915 and 1917, if attempted, would have been clearly beyond their constitutional powers, since no one Legislature can contract away the sovereign powers of subsequent Legislatures to authorize from time to time, increases in the total outstanding debts of a district by contractually engaging not to levy additional future assessments of future taxes to pay them. This is so even though the increased total tax or assessment burden on the subject of the subsequent tax may tend to retard the collection of whatever special assessments or taxes have already been pledged to be assessed or levied against the same taxed subject in earlier Acts by authority of which prior items of indebtedness were created.

We find nothing in the Acts of 1915 or 1917 undertaking to covenant with the purchasers of the first issue of bonds, as part of their security, that such first issue of bonds would be the only issue of bonds attempted to be authorized or negotiated for the purposes of the District. The Legislatures of 1915 and 1917 were without power to thus undertake to tie the hands of future Legislatures by entering into a contractual engagement that no additional liability against the District would be subsequently created or that the Legislature would not later provide for the funding of addi-

tional assessments for benefit levies to finance the additional debt thus brought into being.*

The rule that rights acquired under a law while it is in force do not cease upon its repeal, and that contractual obligations cannot be impaired by any subsequent legislative Act, in view of Section 10 of Article I of the Constitution of the United States, does not preclude the exercise by a succeeding Legislature of its reserved powers of taxation against property already agreed to be taxed to pay an existing indebtedness for which taxes were pledged at the time the prior debt was created, since the exercise of the Legislature's reserved power of taxation in such instances affects such prior rights only by consequence, or incidentally, and not directly.

For the same reasons, the foregoing rule applies to the exercise by the Legislature of its reserved powers to make future determinations of common and general special district benefits and thereupon to provide for *ad valorem* levies in consideration of the same, where the Legislature retains unexercised powers to determine future benefits and to

---

*It would be most unnatural for a private debtor in signing one promissory note, to covenant therein as a part of the promissee's security for its payment that he would refrain from borrowing any more money and abjure absolutely the execution of any other notes or the incurring of any additional indebtedness so long as the first note remained unpaid, in order that his debt-paying capacity to discharge his first note might remain unimpaired. Such a covenant, if made, would be nothing less than an attempted abnegation of the promisor's freedom to enter into future contracts and would be contrary to public policy and unenforceable. Even more so is such a covenant on the part of one Legislature in derogation of the powers of subsequent Legislatures to be condemned as obnoxious to the Legislature's inherent freedom of action and therefore unenforceable, if attempted.

pledge levies of special benefit assessments based thereon, which have not been already incorporated into the pledged security for a funded debt prior in point of time.

The statutes relating to Lake Worth Inlet District are wholly dissimilar to the successive Acts of the Legislature considered and dealt with in St. Louis Union Trust Co. v. Franklin-American Trust Co., 52 Fed. (2nd) 431, 286 U. S. 533, 52 Sup. Ct. Rep. 642, 76 L. Ed. 1274.

Unlike the Arkansas statutes considered in the case just cited, there has been no contractual engagement entered into by the Legislature, on the part of the Lake Worth Inlet District, to the effect that no subsequent bond issue would be authorized against the aggregate resources of the District, or would be permitted to share in the special assessment levies of the District. On the contrary, it is clearly apparent that the Legislature's power was reserved to provide for such additional revenues to be raised as might be found necessary from time to time to confer common and general benefits on the properties of the District sufficient to support and secure the payment of the improvement embarked upon through retirement of the funded debts necessary to be incurred therefor.

Where the purpose of creating a special benefit taxing district is general and permanent in nature, and the resulting common general and indirect benefit to the taxpayers in the District arising from the mere fact of ownership of property in the taxing district itself, is employed as the constitutional basis for incurring funded debts on the part of such District to pay for the execution of the improvements contemplated therein and through the instrumentality of such District, and the Legislature's determination to create such District for such public purpose is made the basis of a pledge of *ad valorem* special benefit tax spreads

over the entire District to pay and retire the funded debts of the District represented by consecutive issues of District bonds under successive Acts of the Legislature authorizing same, such bonds stand on a parity with each other as to the revenues of the District that may lawfully be raised by means of authorized *ad valorem* special benefit tax spreads in the District to be provided from time to time to pay the District's funded debts considered as an indebtedness *en bloc,* and do not take priority in order of time as may be the case where payment of a special improvement District's funded debts is secured by a pledge of specific liens on properties in the District imposed in connection with, and as security for, the payment of a particular authorized bond issue to which the assessments are assigned by way of the creation of a trust therein for the benefit of the particular issue of bonds for which such assessments were imposed and pledged.

The Lake Worth Inlet District is a special improvement district created by law for a purpose that is general and permanent in nature, the revenues of which are provided to be raised by means of such special *ad valorem* special assessment tax levy spreads in the District as the Legislature may from time to time see fit to authorize and may actually impose within constitutional limitations on the properties of the special benefit taxpayers within the District. Although the *ad valorem* levies that may be authorized in such District are limited to the aggregate of the resulting benefit that the District as a whole may be said to confer upon the properties as a whole within such District at the given time of any particular levy attempted to be imposed, it nevertheless follows that where power is given to incur funded debts to be paid out of levies that are authorized to be made sufficient to yield the money necessary to ·pay *in full* what-

ever debts are from time to time authorized, no prejudice results to the holders of any particular issue of bonds by reason of the fact that other issues are permitted to participate therein on a parity, because the fund to pay each issue separately is in effect a fund replenishable out of the District's resources as a whole. Pape v. St. Lucie Inlet District, 75 Fed. (2nd) 865 (Opinion filed February 22, 1935). Certiorari denied by United States Supreme Court, 55 S. Ct. 915, 79 L. Ed. ____.

Decree affirmed.

WHITFIELD, C. J., and ELLIS and TERRELL, J. J., concur.

BROWN, J., dissents.

BUFORD, J., disqualified.