*In re* APPLICATION OF COUNTY COLLECTOR.—(ROBERT G. SKIDMORE, County Collector of Lake County, Plaintiff-Appellee, *v.* ILLINOIS STATE TOLL HIGHWAY AUTHORITY *et al.,* Defendants-Appellants.)

Second District (1st Division)   No. 75-246

Opinion filed April 21, 1977.

SEIDENFELD, J., dissenting.

William J. Scott, Attorney General, of Oak Brook, and Barrett, Kiley & Meyers, of Chicago (John R. Lavery, Walter K. Pyle, and Tanya Dietrich, Assistant Attorneys General, of counsel), for appellants.

Jack Hoogasian, State's Attorney, of Waukegan (William C. Marlatt and Gary Neddenriep, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

On October 26, 1971, the Illinois State Toll Highway Authority (hereinafter referred to as Authority) and the Standard Oil Division of American Oil Company (hereinafter referred to as Standard Oil) filed their objection to judgment being rendered on the application of the county treasurer and ex officio collector of Lake County for taxes paid under protest for the year 1970. The property in question was a leasehold for the oasis on the Authority's property which had been assessed by the County of Lake resulting in a purported tax due of $29,826.40. On February 10, 1972, the circuit court of Lake County found the leasehold interest of Standard Oil to be exempt from taxation under the provisions of section 18 of the toll highways act of 1953 (Ill. Rev. Stat. 1971, ch. 121, par. 314a43) which read:

"All property belonging to the Commission, and the said toll highways, shall be exempt from taxation."

The court further entered an injunction permanently enjoining the county treasurer, county assessor, county clerk of Lake County and the State's Attorney of Lake County and their successors in office from collecting or attempting to assess, levy or collect in any manner any general real estate taxes levied on the oasis or any part thereof or any interest therein.

Since the entering of that injunction the language of that section has been carried forward to section 22 of the toll highways act of 1967 (Ill. Rev. Stat. 1973, ch. 121, par. 100—22). Section 22 was amended by the legislature effective October 1, 1973, and now reads as follows:

"§ 22. All property belonging to the Authority, and the toll highways, shall be exempt from taxation. *However, such part of that property as has heretofore been or shall hereafter be leased by the Authority to a private individual, association or corporation for a use which is not exempted from taxation under Section 19 of the*

*Revenue Act of 1939, is subject to taxation as provided in Section 26 of the Revenue Act of 1939, regardless of any provision in such a lease to the contrary."* (Emphasis added.)

The italicized sentence was added by the legislature by this amendment.

On February 21, 1975 the State's Attorney of Lake County on behalf of the county treasurer and ex officio county collector moved the court to vacate the decree of February 10, 1972. On March 4, 1975, the Authority moved to strike and dismiss the motion to vacate the 1972 decree. This motion was denied on March 7, 1975. On March 10, 1975, the State's Attorney of Lake County, on behalf of the county treasurer and ex officio county collector, moved the court to amend or modify the injunction order restraining the collection of the taxes as aforesaid so that it would be inoperative after the effective date of the amendment. On March 24, 1975, the circuit court of Lake County entered its order finding that it had continuing jurisdiction as to the permanent injunction of the court and found, in substance, that under the amended provisions of section 22 of the toll highways act of 1967 that the leasehold property was taxable as any other real estate or property. The court thereupon vacated, terminated and dissolved the permanent injunction enjoining the taxing authorities from collecting taxes from leasehold interest of Standard Oil. The Authority has appealed.

Stated otherwise, the court in its order of March 24, 1975 found that the original injunction was based upon the exemption granted by section 22 of the toll highways act of 1967; that section 22 was amended effective October 1, 1973, to no longer exempt leasehold interests unless the use of the leasehold was exempt under section 19 of the Illinois Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 500). The court further found that exemption for the use of a leasehold for tollway purposes was not granted by section 19 and concluded that the Authority property was taxable as to the leasehold interest of Standard Oil.

■■ The first contention of the Authority is that the property in question is State property, that under the Illinois Revenue Act there is a blanket tax exemption to all State property and, therefore, notwithstanding the amendment to section 22, the property is nevertheless exempt. The difficulty with this argument is that in the case before us we are considering a leasehold interest of Standard Oil, not State property. In this connection the record discloses a 25-year lease agreement was entered into by Standard Oil and the Authority on December 20, 1957, which is still in effect and will not expire until 1982. This lease specifically provides that the annual rent paid by the lessee, Standard Oil, will be reduced by an amount equal to any ad valorum taxes which might be levied against the leasehold. This issue was considered by our supreme court in *Illinois State Toll Highway Com. v.*

*Korzen* (1965), 32 Ill. 2d 338, 205 N.E.2d 433, and reference is made to that decision in which the supreme court interpreted the provisions of section 18 of the toll highways act of 1953 (then Ill. Rev. Stat. 1963, ch. 121, par 314a43), which read:

> "All property belonging to the Commission, and the said toll highways, shall be exempt from taxation."

In considering the leasehold interest of Standard Oil the supreme court stated:

> "We think the General Assembly, in providing that 'all property belonging to the Commission' without regard to its use, shall be exempt from taxation, meant to include the property here in question." (32 Ill. 2d 338, 340, 205 N.E.2d 433, 434.)

The court, of course, did not consider the amendment to section 22 of the toll highways act of 1967. The court did, however, go on to observe that the service facilities were a part of the tollroad system itself and that

> "The public purpose in exempting its property from taxation would not be fully recognized if the Commission's authority to provide the services through private agencies were to be burdened by the higher rental which would otherwise result." (32 Ill. 2d 338, 341, 205 N.E.2d 433, 435.)

It can thus be seen that the supreme court recognized that under the provisions of the existing lease, and doubtless prospective leases for the operation of the oases, the burden of the taxation on the leasehold interest would be placed upon the Authority itself. And that is what has happened, in this court's opinion, by the amendment to section 22. The legislature may give and the legislature may take away and in the case before us the legislature has, in effect, by the amendment to section 22, taken away the exemption of the leasehold interest of the oases on the Authority property. The burden will, of course, merely be shifted, pursuant to the lease agreement, to the Authority itself. We find it to be clear that the intent of the legislature in amending section 22 was to negate the effect of the decision in *Illinois State Toll Highway Com. v. Korzen.* It is not the function of the judiciary in this case to pass upon the wisdom of the legislature in removing the general tax exemption on the leasehold interests. There being no question that the legislature may take away the tax exempt status of leasehold interests of the Authority as to future leases, we turn to the second contention of the Authority.

The Authority contends that the amendment to section 22 of the toll highways act of 1967 unconstitutionally impairs the existing contract between the Authority and Standard Oil by providing that a leasehold interest is not exempt from taxation and is subject to taxation regardless of any provision in such a lease to the contrary. The Authority states that this amendment purports to affect not only leases entered into before the

amendment was adopted, but proposes to do so regardless of any provisions in the existing lease to the contrary. The last contention which we will consider together with this issue is that the amendment to section 22 of the toll highways act of 1967 unconstitutionally impairs the contracts between the State, the Authority and the bondholders of the toll highway. These issues were not raised in the lower court. We, therefore, find ourselves confronted with that line of cases in Illinois which hold that the court in an appeal will not consider constitutional questions which were not urged in the lower court. (See Ill. Digest *Appeal and Error* § 170(2) (West 1959).) However, there appears to be a contrary line of authority for the reviewing court to consider issues not raised in the lower court on their own motion. In *Wozniak v. Segel* (1974), 56 Ill. 2d 457, 308 N.E.2d 611, the plaintiff appealed from an adverse judgment in a personal injury action and the appellate court affirmed. In its opinion, the appellate court had held that " '[i]n her post-trial motion plaintiff made no mention of the special finding nor did she seek relief from that finding' " (56 Ill. 2d 457, 458, 308 N.E.2d 611, 611) and then held that " '[s]ince we are conclusively bound by the special finding and no attack has been made thereon, we are compelled to affirm the judgment.' " (56 Ill. 2d 457, 458-59, 308 N.E.2d 611, 611.) The supreme court, in reversing the appellate court, stated:

> "It is one thing to say, as many opinions of this court and the appellate court have said, that a litigant is 'concluded' or 'conclusively bound' by some action he has taken or failed to take. It is a very different thing to say that a court is barred from reaching a just result by that action or inaction." (56 Ill. 2d 457, 460, 308 N.E.2d 611, 612.)

The court observed the trial court had the power to consider matters not raised and stated that in *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 105, 210 N.E.2d 191, 193, that while section 68.1(2) of the Civil Practice Act (Ill. Rev. Stat. 1961, ch. 110, par. 68.1(2)) " 'confines a litigant, upon appeal, to those matters specifically raised in the trial court, it contains nothing that suggests an intention to interfere with the power of a trial court to act upon its own motion.' " (56 Ill. 2d 457, 460, 308 N.E.2d 611, 612.) The court went on to observe that:

> "And in that case we pointed out that the decisions of other courts sustaining the authority of a trial court to grant a new trial upon its own motion 'are based upon a recognition that the role of a trial judge is not that of a presiding officer or an umpire, and that he is responsible for the justice of the judgment that he enters.' " (56 Ill. 2d 457, 460' 308 N.E.2d 611, 612.)

The court then went on to recognize the fact that the appellate court, likewise, had those powers and, in quoting from *Hux v. Raben* (1967), 38 Ill. 2d 223, 224, 230 N.E.2d 831-32, it observed,

" 'These provisions recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system.' " 56 Ill. 2d 457, 461, 308 N.E.2d 611, 612-13.

■■ In view of the importance of the decision involved herein, as it relates to the Authority and the people of the State of Illinois, and noting that the issue presented is one of law and not of fact, we therefore conclude that we have the power to consider the constitutional issue raised for the first time in this court.

In *People v. Ottman* (1933), 353 Ill. 427, 430, 187 N.E. 470, 472, the court considered whether the legislature could extend or alter the terms of a criminal recognizance after its execution. The court stated:

> "The law existing at the time a contract is made becomes a part of it. The constitutional provision denying the power to pass any law impairing the obligation of a contract has reference only to a statute enacted after the making of a contract."

Similarly in *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 201 N.E.2d 434, the supreme court applied the same logic in holding that a contract entered into after the passage of the Workmen's Compensation Act was properly governed by that statute.

In *Burdick v. People* (1894), 149 Ill. 600, 36 N.E. 948, the court considered the criminal sale by the defendant of a railroad ticket from Cairo to Chicago without authority. Defendant contended that the statute was unconstitutional. The court, however, held otherwise but stated in passing:

> "But, if it be admitted that the ticket is a contract, the statute would only be inoperative and of no effect as to contracts existing at the time of its passage; it would be valid and constitutional as to future contracts." (149 Ill. 600, 607, 36 N.E. 948, 950.)

The court went on to hold that the ticket was sold in 1893, 18 years after the passage of the act and that the contention of the defendant was to no avail.

Lastly, attention is directed to the oft-quoted case of *Schewe v. Glenn* (1922), 302 Ill. 462, 466, 134 N.E. 809, 810, where the court stated:

> "Whether the statute as applied to this case is invalid is a different question. A statute tending to impair the obligation of a contract may be invalid as to contracts existing at the time of its passage but valid as to future contracts. The law existing at the time a contract is made becomes a part of it, and the constitutional provision has reference only to a statute enacted after the making of a contract. We believe these rules are universally applied by courts. The cases are too numerous to quote."

The contract in question herein was entered into by the Authority and Standard Oil in 1957. The statute at that time merely stated, "All property belonging to the Commission and the said toll highway shall be exempt from taxation." The supreme court in *Korzen* said that it was the intention of the legislature that a leasehold interest for the operation of the facility was not subject to taxation and that was the obvious intention of the legislature. As observed above, the statute was amended effective October 1, 1973, and implied that a leasehold interest was subject to taxation regardless of any provision in such lease to the contrary. The 1870 Constitution, article II, section 14, provides:

> "No *ex post facto* law, or law impairing the obligation of contracts, or making any irrevocable grant of special privileges or immunities, shall be passed."

This provision was incorporated into the 1970 Constitution in article I, section 16.

We find that the action of the legislature insofar as it imposed taxation upon existing leases executed under the Toll Highway Act was a law impairing the obligation of the contract both as to the Authority and Standard Oil. Under the provisions of the lease this amendment results in the payment of the tax in question by the Authority. Explicitly, we find this to be an impairment of a valid, existing contract contrary to the provisions hereinabove quoted of the Illinois Constitution.

Judgment of the trial court is reversed.

Reversed.

RECHENMACHER, P. J., concurs.

Mr. JUSTICE SEIDENFELD, dissenting:

The majority concludes that the amendment which removed the provision granting tax exempt status to the property belonging to the Toll Authority impaired the pre-existing contract between the Authority and its privately owned lessee, Standard Oil. I find no impairment of contract in constitutional terms.

"[T]he power to exempt property from as well as the power to levy taxes upon property is an essential element of sovereignty and can only be surrendered or diminished by plain and explicit terms of a statute." (*People v. Bennett Medical College*, 248 Ill. 608, 609 (1911).) In this case the statute granting the exemption (Ill. Rev. Stat. 1967, ch. 121, par. 100-22) contains no express promise that the exemption will continue. And every presumption militates against finding that the legislature intended to bind itself from exempting property from taxation. *People v. City*

*of St. Louis,* 291 Ill. 600, 606-07 (1920). See also *Small v. Pangle,* 60 Ill. 2d 510, 514 (1975).

As a general rule, absent a constitutional violation, a taxpayer has no vested right in the continuance of particular taxing laws. *People v. Chicago & Northwestern Ry. Co.,* 340 Ill. 102, 108 (1930); *People v. Board of Review,* 290 Ill. 467, 472 (1919). See also *Dee-El Garage, Inc. v. Korzen,* 53 Ill. 2d 1, 15 (1972) (Kluczynski, J., dissenting).

In *Straughn v. Camp,* 293 So.2d 689, 694 (Fla. 1974), the Supreme Court of Florida stated:

> "Merely because \* \* \* leaseholds were originally granted tax exemption and they enjoyed exempt status for a number of years, affords no basis for forever removing and completely immunizing them from taxation. See, e.g., *Sovereign Camp, W. O. W. v. Lake Worth Inlet District of Palm Beach County,* 119 Fla. 782, 161 So. 717, and *Curators of Central College v. Rose,* 182 S.W.2d 145, appeal dismissed 65 S. Ct. 269, 323 U.S. 678, 89 L. Ed. 650. Such exempt status may be changed by a subsequent legislature."

See also *Barwise v. Sheppard,* 299 U.S. 33, 81 L. Ed. 23, 57 S. Ct. 70, 73 (1936).

When the statute places an enforceable contract obligation upon the legislature to refrain from repealing tax exemptions, the legislature may be prevented from repealing a tax exempt status which it has granted. (See, *e.g., People ex rel. County Collector v. Northwestern University,* 51 Ill. 2d 131, 135-36 (1972).)[1] However, the intention to contract away the taxing power must expressly appear. (See *Opinion of the Justices,* ___ Mass.___, 313 N.E.2d 882, 889 (Mass. 1974). See also *Wisconsin & Michigan Ry. Co. v. Powers,* 191 U.S. 379, 385, 48 L. Ed. 229, 231 (1903).) In *Northwestern University* the legislative grant of the exemption granted to property of the university was express and unequivocal. (" '\* \* \*shall be forever free from taxation for any and all purposes.' " 51 Ill. 2d 131, 132.) Here that intention does not appear.

There is no binding contract between the legislature and either the Authority or Standard Oil. I would therefore affirm the judgment.

---

[1] Even this may not follow if an overriding public interest requires alteration or modification of even the clear contractual undertakings of the State. (See *City of El Paso v. Simmons,* 379 U.S. 497, 13 L. Ed. 2d 446, 85 S. Ct. 577, 584 (1965).) I do not suggest, however, that this balancing process is applicable here.