The Northwestern University

*v.*

The People *ex rel.* Henry B. Miller.

Taxation—*power of legislature to exempt property.* It was not competent for the General Assembly, under the constitution of 1848, to exempt from taxation property owned by educational, religious or charitable corporations, which was not itself used directly in aid of the purposes for which the corporations were created, but which was held for profit merely, although the profits were to be devoted to the proper purposes of the corporation.

Appeal from the County Court of Cook county; the Hon. M. R. M. Wallace, Judge, presiding.

Mr. Sidney Smith, and Messrs. Goodrich & Patterson, for the appellant.

Mr. James P. Root, and Mr. George O. Ide, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

This appeal is from a judgment rendered by the Cook county court against certain lands and town lots in the towns of Evanston and Willmette, in Cook county, for delinquent taxes.

Appellant's claim is, that the lands and town lots are exempt from all taxation, which claim is based on the fourth section of an amendment to its charter, approved Feb. 14, 1855, in these words: " That all property, of whatever kind or description, belonging to or owned by said corporation, shall be forever free from taxation for any and all purposes."

It is conceded by a stipulation read in evidence on the trial in the court below, and made part of the record, that the lands and town lots, the taxation on which is in controversy, " are leased by appellant to different parties on leases for a longer or a shorter time, and that none of them are used or occupied for buildings or other direct appliances for education."

The question we propose to consider is, conceding that the clause we have quoted from appellant's charter is, as it seems

to be, broad enough to comprehend these lands and town lots, was it competent for the General Assembly, under the constitution of 1848, which was in force at the date of that enactment, to grant an exemption so broad and sweeping in its character?

It was provided by section three, article nine, of that instrument: "The property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for schools, religious and charitable purposes, may be exempted from taxation."

It is not claimed that appellant is, in any sense, a public corporation, but it is claimed that the purpose for which it is created is so far beneficial to the public, that it affords a sufficient consideration for the grant of exemption from taxation in the amendment, and that when the amendment was accepted and acted upon by the corporators it must be held a vested right, which can not be withdrawn by subsequent legislation, because of the provision in the constitution of the United States which prohibits a State from passing a law impairing the obligation of a contract.

If it was competent for the General Assembly to make the exemption, we are not disposed to contest the correctness of this position; but if it was not competent to make the exemption, the attempt was a nullity, and the case is not affected by the constitution of the United States.

The corporation being private, the tax-payer, in general, is relieved of no obligation in consequence of the exemption which he would otherwise have to discharge by the payment of taxes, and in proportion as appellant becomes the owner of property which is thereby withdrawn from taxation, the burden of taxation is increased upon him.

The equality between burden and benefit, in such cases, is presumptive only, and can, if at all, only be true in fact in reference to the public as an aggregate. In the very nature of things, such exemptions must, proportionally, increase the burdens upon individual tax-payers, in many cases, where there can be no corresponding actual benefits. It is true, it is impracticable that there can, in any instance of the levy and col-

lection of public taxes, be an actual equivalent received by every tax-payer for the full amount he pays, or that there can be any system of taxation devised so perfect in its practical operation, that there shall be no inequality in the distribution of the burden; but it has always been recognized that laws imposing taxes are just and equitable in proportion as they approximate such principles, and unjust and inequitable as they depart from them. The general principle upon which taxation was required to be levied by the constitution of 1848, was that of uniformity, and exemptions were exceptional, and, therefore, to be construed strictly; and such is the general rule of construction in regard to exemptions from taxation. Cooley on Taxation, 146; Sedgwick on Stat. and Const. Law, 632. As is said in a recent case by the Supreme Court of the United States, *Tucker* v. *Ferguson*, 22 Wallace, 575: "The taxing power is vital to the functions of government. It helps to support the social compact, and give it efficacy. It reaches the interests of every member of the community. It may be restrained by contract in special cases for the public good, where such contracts are not forbidden—but the contract must be shown to exist. There is no presumption in its favor. Every reasonable doubt should be resolved against it. Where it exists it is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require. It is in derogation of public right, and narrows a trust created for the good of all."

Bearing in mind this rule of construction, if it had been intended the General Assembly was to be empowered to exempt all property, of whatever kind or description, as is assumed to be done by the amendment to the charter, we must suppose it would have been so said, in unmistakable language. By the language of the constitution we have quoted, while a discretion is conferred on the General Assembly, whether to exempt or not, and if it shall determine to exempt, the amount of the exemption, it is clearly restricted, in the exercise of this discretion, to property for schools, and for religious and charitable purposes. Property for such purposes, in the primary and

ordinary acceptation of the term, is property which is itself adapted to and intended to be used as an instrumentality in aid of such purposes. It is the direct or immediate use, and not the remote or consequential benefit to be derived through the means of the property, that is contemplated. Houses, furniture, grounds, etc., to be actually used for educational purposes, may be said to be for schools, or for school purposes; but property to be used in farming or manufacturing, or in trades, is property for farming, for manufacturing or for trade, and the purpose to which the resulting profits may be devoted does not change its character. So, property owned by corporations created for school, religious or charitable purposes, and property for schools, or religious or charitable purposes, by no means necessarily mean the same thing. The ownership may extend to all kinds of property authorized by the charter, whether it is such as is to be actually used in connection with the purposes of the incorporation or otherwise; but property for the purposes of the incorporation must be such as is to be used in connection with those purposes. An accurate description of the property, the tax upon which is in controversy, would seem to be, "property used for profit for the benefit of the university."

As illustrative, and in support of this construction, the following cases, which, though arising on the construction of statutes, are equally pertinent to the construction of like clauses in constitutions, may be referred to:

In *The First M. E. Church* v. *The City of Chicago*, 26 Ill. 482, the question was, whether, under a statute exempting from taxation "every building erected for the use of any literary, religious, benevolent, charitable or scientific institution," a building was exempted of which the third and fourth stories were in one large room used exclusively for religious purposes, while the first and second stories were rented for compensation, and the proceeds applied to religious purposes; and it was held, the portion rented for compensation was taxable, and the portion occupied for religious purposes was not. The court said: The meaning of the law is, as applied to

religious buildings and furniture, that they must be used directly for sacred, and not for secular purposes. It is not enough that the profits or income of the secular uses are to be applied to sacred purposes. When money is made by the use of the building, that is profit, no matter to what purpose that money is applied. It will be observed that the words of the statute, there, in describing the building to be exempted, are, " any building for the use of any literary or religious society," etc.; and the argument that the fact the profits derived from renting were devoted exclusively to religious purposes, showed that the rooms rented, as well as the balance, were for the use of the religious society, was equally as forcible, and rested on the same premises, as does the argument here that the property is for schools, or the purposes of schools, although it is devoted to agricultural, or other purposes entirely disconnected from schools, because the profits to be derived from renting it are to be appropriated in aid of the university.

In *Pierce* v. *The Inhabitants of Cambridge*, 2 Cushing, 612, the statute exempted from taxation "the personal property of all literary, benevolent, charitable and scientific institutions, and such real estate belonging to such institutions as shall be actually occupied by them, or by the officers of such institutions, *for the purposes for which they* were incorporated."

The plaintiff was a professor of mathematics and astronomy in Harvard College, and the house and land which he occupied was the property of the college, but had been let to him at a rent of $400 a year, and the question was, whether this property was within the exemption of the statute. It was held that it was not—that the occupation of a lessee was not such an occupation as was intended by the statute, but that it would have been otherwise if the building had been erected by one of the professors or officers of the college, and had been occupied by the plaintiff with the permission of the college, and without having any estate therein or paying any rent therefor.

*Washburn College* v. *Commissioners of Shawnee County*, 8 Kansas, 344, presented the question, whether a quarter sec-

22—80th Ill.

tion of land held by the plaintiff, which was a literary and educational institution, for the sole purpose of thereafter erecting its permanent buildings thereon, but which was at that time unimproved and unoccupied, was exempt from taxation under a clause in a statute exempting from taxation "all property used exclusively for State, county, municipal, literary, educational, scientific, religious and charitable purposes;" and it was held that it was not. See, also, *Orr* v. *Baker*, 4 Ind. 86; *Methodist Church* v. *Ellis*, 38 ib. 3; *Lowell* v. *Lowell*, 1 Metcalf, 538; *State* v. *Ross*, 4 Zabriskie, 497; *Wyman* v. *St. Louis*, 17 Mo. 335.

Our conclusion is, that it was not competent for the General Assembly to exempt from taxation property owned by educational, religious or charitable corporations, which was not itself used directly in aid of the purposes for which the corporations were created, but which was held for profit merely, although the profits were to be devoted to the proper purposes of the corporation. To the extent, therefore, that the 4th section of the amendment to appellant's charter, approved February 14, 1855, assumes to do so, it is to be considered void and of no effect, but no further.

The judgment is affirmed.

*Judgment affirmed.*