# TRIMBLE *v.* CITY OF SEATTLE.

### ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 108.   Argued December 9, 1913.—Decided January 5, 1914.

The state court having declared the policy of the State as excluding a constructive obligation to indemnify against the exercise of the sovereign power of taxation from leases given by the State, this court will not overthrow it.

In ordinary cases of leased property, whether the lessor or lessee shall bear the burden of taxation is not a matter of public concern, but an obligation not to tax property leased by the State is a restriction of public import not lightly to be imposed.

In this case *held*, that the imposing of assessments for benefits on property in Seattle leased by the State of Washington is not an unconstitutional impairment of an implied covenant in the lease that the lessor will pay assessments.

Whether landlords or tenants shall pay taxes and assessments on leased property is a matter of private arrangement, and compelling tenants of the State to pay them does not deny them equal protection of the law because there may be a practice the other way in private leases.

*Quære,* whether exemption from taxation would not create a favored class and thus deny equal protection to other property owners.

When an interest in land, whether freehold or for years, passes from the public domain into private hands, there is a natural implication that it goes with the ordinary incidents of private property and subject to be taxed. *New York ex rel. Metropolitan Street Ry.* v. *Tax Commissioners,* 199 U. S. 1.

64 Washington, 102, affirmed.

THE facts, which involve the validity of assessments on lands leased by the City of Seattle to the plaintiffs in error, are stated in the opinion.

*Mr. C. W. Corliss* and *Mr. George McKay* for plaintiffs in error, submitted:

In leases such as these the lessor is bound to pay all taxes, assessments and other charges on the leased land, and the State, the same as a private lessor, is bound by this rule, though in such a case as this the State's covenant takes this form: the State agrees not to impose charges on the leased land and compel the lessee to pay the same.

The lands of the State in the absence of the State's consent are not subject to special assessment for local improvements. Constitution of the State, Art. VII, § 2; Hamilton on Special Assessments, § 281; *St. Louis* v. *Brown,* 155 Missouri, 545; *State* v. *Hartford,* 50 Connecticut, 89.

At the time the leases involved in this action were made no consent had been given by the State to the levying of special assessments on its land; the making of the leases did not subject the land to special assessment. *Daugherty* v. *Thompson,* 71 Texas, 192; *Davis* v. *Burnett,* 77 Texas, 3.

Nor was there any provision of the written or the common law splitting assessments against leased land between lessor and lessee.

The rule of the common law is that, in the absence of a covenant or condition to the contrary, there is an implied covenant in every lease that the lessor, not the lessee shall

pay all taxes and assessments levied on the leased land during the term. Taylor's Landlord and Tenant (7th ed.), p. 289, par. 341, § VI, c. 8; Woods' Landlord and Tenant, pp. 683, 684, § 417; 18 Am. and Eng. Ency. (2d ed.) 650; 32 Am. Digest, Century ed., pp. 578–587, §§ 519 to 529.

There is difference in this respect between a lease and a grant. In a grant there are no implied covenants, but the State, as lessor, is bound by the general rule the same as a private person. See *West. & Atl. R. Co.* v. *Georgia*, 14 L. R. A. 438, 455.

Under such conditions the State is regarded, *pro hac vice*, as a private person itself. *Murray* v. *Charleston*, 96 U. S. 432; *Hall* v. *Wisconsin*, 103 U. S. 5; *Davis* v. *Gray*, 16 Wall. 203; *Daggett* v. *Bonewitz*, 107 Indiana, 279; *Lessieur* v. *Price*, 12 How. 59; *Gray* v. *Coghlen*, 72 Indiana, 567.

States which issue negotiable paper incur the same responsibilities which attach to individuals or corporations in like case. *Bond Debt Cases*, 12 N. Car. 200, 272; *Floyd Acceptances*, 7 Wall. 666, and cases *supra*.

The statutes under which these leases were executed show clearly that the leases were intended to be ordinary leases, and subject to the legal incidents of such leases. See Laws of 1897, pp. 229–242, and 253, § 50; Laws of 1899, pp. 138, 139.

The rule that the State as lessor is bound by the same obligations as a private lessor is not qualified or overthrown by the rule that a legislative grant is construed most strongly in favor of the State and against the grantee. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420. See also *Slidell* v. *Grandjean*, 111 U. S. 437; *Missionary Soc'y* v. *Dalles*, 107 U. S. 343; *Hancock* v. *McKinney*, 7 Texas, 445; *Dubuque &c. R. Co.* v. *Litchfield*, 23 How. 88; *Rice* v. *Minn. &c. R. R.*, 1 Black, 380.

The covenant of the State to pay all taxes and assess-

ments on the leased land during the term works a practical exemption of the leasehold from the payment of assessments on the leased land for the State cannot impose its burden by statute, on another, nor can the State pass a statute in direct violation of its contract. The lessor's covenant to pay the assessments takes the form, in this case, that the State will not impose burdens on the land and attempt to compel the lessee to discharge them. *Met. St. R. Co.* v. *Tax Comm.*, 199 U. S. 1; *Coast Line R. Co.* v. *Savannah*, 30 Fed. Rep. 646.

The statutes and ordinances authorizing these assessments impair the obligation of the State's lease, for the reason that by the statute and ordinances subsequent to the lease, the lessee is compelled, if these legislative acts are valid, to pay and discharge a burden imposed on the land, which burden is within the State's covenant with its lessee.

Nothing in the other provisions of the ordinance in any way qualifies this plain, clear legislative declaration that even the reassessment is against the land.

As matter of law and fact, special assessments are against the land. *Chicago &c. R. Co.* v. *Phillips*, 111 Iowa, 377; *Macon* v. *Patty*, 57 Mississippi, 378, 386; *New England M. S. Co.* v. *Vader*, 28 Fed. Rep. 265, 274.

The statutes authorizing the levy of special assessments against certain leases also deny to the lessees the equal protection of the laws.

The assessments take plaintiff's property without due process of law. *Coast Land Co.* v. *Seattle*, 52 Washington, 380, 383.

In *Coast Land Co.* v. *Seattle*, 52 Washington, 380, p. 383, and *Rabel* v. *Seattle*, 44 Washington, 482, there are *dicta* to the effect that a leasehold is subject to special assessment for a local improvement. As to future leases there is no objection to a statute which apportions between lessor and lessee the burden of taxes and assessments on

the leased land, but to make such a statute applicable to past leases is another thing.

. *Mr. Howard A. Hanson,* with whom *Mr. William B. Allison* and *Mr. James E. Bradford* were on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an attempt to reverse a judgment confirming an assessment on certain leaseholds of tide lands. The leases were executed by the State in 1899. Subsequent statutes of 1905 and 1907 respectively, authorized the assessment of such leaseholds for local improvements specially benefiting them, and the inclusion of them within local improvement districts by cities of the first class. The City of Seattle made a plank roadway, created an improvement district, levied an assessment which failed, *Coast Land Co.* v. *Seattle,* 52 Washington, 380, and then in due form levied the reassessment that is in question here. The plaintiffs in error argue that the leases contained an implied covenant for quiet enjoyment and that the subsequent laws that authorized the assessment impair their constitutional rights. Art. I, § 10. Amendment XIV, § 1. The Supreme Court of Washington, admitting the general rule as to leases, held that so far as concerns taxation, it did not apply to leases made by the State. 64 Washington, 102.

The concession of the court was that in private contracts "in the absence of a covenant or condition to the contrary, it is an implied covenant in every lease that the lessor shall pay all taxes and assessments levied on the leased land during the term." Stated in this form, the rule appears to be a rule of policy to which special considerations may set a limit. But it might be suggested that if the State should expressly covenant against such

assessments it could not impair the obligation of its contract by a subsequent law. The words used in these leases are 'lease, demise and let,' and from *Spencer's Case*, 5 Co. Rep. 16*a*, 17*a*, down to the present day these words have been said to imply a covenant. 1 Wms. Saund. 322, n. 2. *Mostyn* v. *West Mostyn Coal & Iron Co.*, 1 C. P. D. 145, 152. *Mershon* v. *Williams*, 63 N. J. L. 398, 406. Words express whatever meaning convention has attached to them, and so it may be argued that the State has covenanted against this tax in express terms.

Nevertheless it is obvious that the supposed meaning was not reached by simple interpretation. There is no suggestion of warranty in *dedi* or *demisi* by any usage of speech alone. The warranty was what Lord Coke called a warranty in law, Co. Litt. 384*a*, an institution, not depending upon an expression of intent, not arising because the words mean warrant, but imposed from without by the law. In Butler's note to this page the lessor's obligation is put as reciprocal to the tenant's obligation to pay rent, (compare 5 Co. Rep. 17*a*), just as the warranty in *dedi* in some cases was a consequence of tenure. One may wonder whether in fact the warranty incident to a sale in early law before the machinery of implied contracts was thought of (Glanv. VII, c. 2; X, c. 15; Lex. Sal. c. 47; 1 Löning, Vertragsbruch, 103; 2 Inst. 274, 275), was not given a scholastic turn, extended, limited and embodied in sacramental words—whether Glanville's *Donatores*, grantors, did not suggest the special effect of *dedi* in the Statute de Bigamis as interpreted by Lord Coke. (The Statute itself says that the feoffor is held *ratione doni proprii*. 4 Ed. I., c. 6.) But whatever may be the history, it is plain, as we have said, that the rule is not the result of interpretation but of doctrine; and hence it is that very commonly the rule is stated as expressing the general operation of a lease and not as depending upon the use of a particular word. 64 Washington, 102, 104. *J. W. Perry*

*Co.* v. *Norfolk,* 220 U. S. 472, 477. *Duncklee* v. *Webber,* 151 Massachusetts, 408, 411, and cases cited in 24 Cyc. 1057; 18 Am. & Eng. Encyc. of Law, 2d ed. 650. It has come back to what it started as being, a construction of the law; and since, notwithstanding its age, the special effect of *demisi* has not entered into speech so far as to reach popular understanding, the rule still may be construed as extending no further than reason dictates. Indeed warranties in law always have been dealt with on this principle. See e. g. *Brett* v. *Cumberland,* Cro. Jac. 521, 523. Therefore we may consider the question before us on the footing upon which it was discussed by the Supreme Court of the State.

The question is, then, whether our duty requires us to overthrow a decision that the policy of the state law excludes a constructive obligation to indemnify against the exercise of the sovereign power of taxation from leases by the State. Put in this form, it is not hard to answer. When the law creates an obligation outside of the expressed intent of the parties, it must consider all the circumstances, and the effect with reference to them. In ordinary cases the whole property is taxed and which party shall bear the burden is not a matter of public concern. But when the State makes the lease, the supposed obligation would be an obligation not to tax—a restriction of public import not lightly to be imposed. *Providence Bank* v. *Billings,* 4 Pet. 514, 561. *Wells* v. *Savannah,* 181 U. S. 531, 539, 540. *St. Louis* v. *United Railways Co.,* 210 U. S. 266, 273, 274. *J. W. Perry Co.* v. *Norfolk,* 220 U. S. 472, 480. It is urged that to deny the State's obligation discriminates unconstitutionally against this class of lessees, since all others are free from the burden. But that is not true. Whether landlord or tenant shall pay a tax is a matter of private arrangement, and the practice one way or the other has no bearing on the matter. The argument from inequality really works the other way. If these leaseholds are not

taxable, they are a favored class of property; for ordinarily leaseholds are taxed even if they are lumped and included in the value of the fee. When an interest in land, whether freehold or for years is severed from the public domain and put into private hands, the natural implication is that it goes there with the ordinary incidents of private property and therefore is subject to being taxed. See *New York ex rel. Metropolitan Street Ry. Co.* v. *New York State Board of Tax Commissioners*, 199 U. S. 1, 38.

The plaintiffs in error think that thus far there has been a failure to understand their contention that these assessments are against the land, and therefore are met by the supposed contract of the State, that the lessees should have the land free of all charges. The court below appears to us to have decided in direct response to that argument that the contract of the State did not go so far, and we are of opinion that we ought not to pronounce the decision wrong. There was some subsidiary discussion of the meaning and operation of the Statutes, but upon those matters we do not go behind the judgment of the Supreme Court of the State.

*Judgment affirmed.*