(No. 44412.—

THE PEOPLE *ex rel.* THE COUNTY COLLECTOR OF COOK COUNTY, Appellee, v. NORTHWESTERN UNIVERSITY, Appellant.

*Opinion filed March 30, 1972.*

HOWARD J. TRIENENS, EMERSON T. CHAND-LER, WILLIAM H. THIGPEN, and R. EDEN MARTIN, all of Chicago (SIDLEY & AUSTIN, of counsel), for appellant.

EDWARD V. HANRAHAN, State's Attorney, of Chicago (CAMILLO F. VOLINI, JOHN O. TUOHY, and ARTHUR BELKIND, Assistant State's Attorneys, of counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case presents another attack upon the provision of Northwestern University's 1851 corporate charter, as amended in 1855, which grants it exemption from property taxes. That provision states: "That all property, of whatever kind or description, belonging to or owned by said corporation, shall be forever free from taxation for any and all purposes." Private Laws of 1855, p. 483.

The results of the first two attacks upon the charter were thus succinctly described in the opinion of this court disposing of the third attack:

"That this amendment was a contract between the State and the university whose obligation could not be impaired by subsequent legislation imposing taxes upon the property of the corporation, was decided by the Supreme Court of the United States in the case of *Northwestern University v. People, 99 U.S. 309 [1878],* reversing the decision of this court in the same case. (80 Ill. 333.) Many years later the board of assessors of Cook County assessed certain real estate of the university for taxation, and it was sought to sustain the assessment on the ground that, the real estate having been acquired prior to the passage of the amendment to the charter, the exemption therein granted did not apply to it. This

contention was overruled, and it was decided that the amendment clearly exempted from taxation all the property of the corporation acquired prior to the amendment. *In re Northwestern University [1903], 206 Ill. 64."* *Northwestern University v. Hanberg (1908), 237 Ill. 185, 188.*

The third attack was based upon the assertion that the 1855 amendment to the charter did not apply to any property acquired by the corporation after the amendment. This claim, too, was rejected in 1908. 237 Ill. 188.

No further attack was made upon the charter provision until the property involved in this case, which is owned by Northwestern University and leased to Dee-El Garage, Inc., was assessed for taxation for the year 1967. The property, which is improved with a parking garage, is operated by the lessee, and the income received by the university has been used solely for the educational purposes set forth in its charter. The circuit court of Cook County overruled the objection filed by the university, held the charter exemption void, and entered judgment of sale. The university has appealed.

The first contention advanced in support of the present attack upon the validity of the exemption is that by reason of its express terms the charter did not constitute a contract within the meaning of section 10 of article I of the constitution of the United States, which provides that no State shall pass any law impairing the obligation of contracts. The provision of the charter relied upon to support this contention is that which authorizes the university "to make and alter from time to time such by-laws as they may deem necessary for the government of said institution, its officers and servants, provided such by-laws are not inconsistent with the constitution and laws of this State and of the United States ***." It is contended that the references to the altering of bylaws "from time to time," together with the requirement that the bylaws must be consistent with the constitution of

Illinois and of the United States, constituted an express condition subsequent, the effect of which was to make inoperative the tax-exemption provision of the charter to the extent that it should become repugnant to any future amendment to the Federal constitution. In a similar vein, it is argued that the charter must be construed, by operation of law, to include a provision invalidating the tax-exemption provision to the extent that it should violate any future constitutional provision.

Both of these contentions are efforts to read into the charter itself some self-defeating ingredient, and thereby to escape the impact of the clause of the Federal constitution which prohibits the impairment of contracts. It is clear that the first contention, which refers to the bylaws of the corporation, has nothing to do with the validity of the tax exemption. And so far as we are able to understand the second contention, it adds nothing to the attack otherwise made upon the validity of the tax exemption under the equal-protection clause of the fourteenth amendment to the constitution of the United States. We therefore turn to a consideration of that matter.

It is argued that the charter tax exemption deprives other colleges and universities, which do not have similar exemptions, of the equal protection of the law and therefore violates the fourteenth amendment. Viewed from today's perspective, the charter tax exemption of Northwestern University is highly unusual. But as of the date when the tax exemption was enacted as a means of inducing donations to the institution, the tax exemption was not at all unusual. The public interest in higher education was recognized in the early days of the State, but at that time the recognition took the form of special charters authorizing the incorporation of particular educational institutions. The charters contained tax exemptions, the terms of which varied, apparently in accordance with the inducement thought necessary to bring about contributions to establish and maintain the institutions. Some of

the variations are set forth in this court's opinion in *People ex rel. Gill v. Lake Forest University (1937), 367 Ill. 103.*

Prior to the adoption of the constitution of 1870, a large number of corporate charters had been granted by the legislature to private educational institutions. There were more than 80 such charters which contained some provision for tax exemption. Only a relatively small number of these institutions have survived. Whether the demise of the others was due to the inadequacy of the inducement offered by way of tax exemption or to other causes is unimportant in connection with the determination of this case. The purpose of the tax exemptions was, of course, to bring about the donation of money or property to the institutions.

With the adoption of the constitution of 1870 the situation changed dramatically. That constitution prohibited the legislature from granting to any corporation any special privilege (art. IV. sec. 22), and with respect to exemption from taxation provided that such "property as may be used exclusively for \*\*\* school \*\*\* purposes, may be exempted from taxation; but such exemption shall be only by general law." (Art. IX, sec. 3.) And by general law the legislature exempted only that property of schools which was used exclusively for school purposes, and not leased or otherwise used with a view to profit.

Educational institutions established subsequent to 1870 therefore do not enjoy the same kind of tax exemption that is enjoyed by Northwestern University. That fact, however, does not impair the validity of Northwestern's charter provision. As this court stated in 1908: "The changed conditions with which the university is now surrounded cannot affect the meaning of the amendment passed in 1855. Doubtless the legislature did not foresee the enormous growth of the city of Chicago, the increase in the value of property, the growth in the wealth, and the work, the wants and necessities of the university. The university was not then regarded as an

incubus on the community. Schools of higher learning were scarce, and the legislature which granted this exemption to Northwestern University granted to various other schools perpetual exemption from taxation of all the property they should ever acquire. (Private Laws of 1855, pp. 380, 384, 503, 511, 513.) Even now the legislature appropriates yearly for the University of Illinois, from money raised by taxation, sums vastly greater than those released to the Northwestern University through this exemption." *Northwestern University v. Hanberg (1908), 237 Ill. 185, 191-2.*

In our opinion Northwestern's charter tax exemption does not, as the trial court held, violate the equal-protection clause of the fourteenth amendment by arbitrarily discriminating against other educational institutions whose exemptions from taxation are not so broad. The contract with the State affords a rational, indeed a constitutionally required, distinction between the university and other institutions. The different tax exemption accorded institutions organized after the adoption of the constitution of 1870 does not alter the situation. "The fact that Congress enacts a statute containing a 'grandfather clause,' which exempts from the general income tax certain corporations organized prior to a specified date, does not of itself indicate that Congress has made an arbitrary classification. *** Normally a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts. *** Just as a State may provide that after a specified date newly established common carriers must obtain state approval before entering into business so as to prevent proliferation of such carriers and excessive use of the State's highways, see *Stanley v. Public Utilities Comm'n [295 U.S. 76, 79 L.Ed. 1311, 55 S.Ct. 628 (1935)],* similarly Congress does not exceed its power to tax nor does it violate the Fifth Amendment when it refuses to exempt from tax newly formed corporations, the multiplication of which might

burden otherwise valid federal programs." *United States v. Maryland Savings-Share Insurance Corp. (1970), 400 U.S. 4, 6-7, 27 L.Ed.2d 4, 7-8, 91 S.Ct. 16.* See also *Dandridge v. Williams (1970), 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153.*

Nor is the university's charter tax exemption invalid because it violates the rights of other taxpayers under the due-process and equal-protection clauses of the fourteenth amendment by increasing their taxes, as the trial court also held. This proposition, if accepted, would invalidate all exemptions, for all of them, to a greater or lesser degree, transfer the burden of taxation to others.

The judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions to sustain Northwestern's objection.

*Reversed and remanded, with directions.*