(No. 48251.—<br>
(No. 48313.—

NABISCO, INC., Appellee, v. BERNARD KORZEN, County Treasurer, *et al.,* Appellants.—PEPSI-COLA GENERAL BOTTLERS, INC., Appellant, v. THOMAS TULLY, County Assessor, *et al.,* Appellees.

*Opinion filed Sept. 20, 1977.—Rehearing denied Nov. 23, 1977.*

MORAN, J., took no part.
UNDERWOOD and RYAN, JJ., dissenting.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Paul P. Biebel, Jr., Deputy State's Attorneys, and Henry A. Hauser, Arnold F. Block, and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellants.

Keith F. Bode, Robert C. Keck, Jr., and James E. Souk, of Chicago (Jenner & Block, of counsel), for appellee.

Howard J. Trienens, William H. Thigpen, R. Eden Martin, and Richard L. Miller, Jr., of Chicago (Michael C. Weston, of Evanston, and Sidley & Austin, of Chicago, of counsel), for *amicus curiae* Northwestern University.

Devoe, Shadur & Krupp, of Chicago (Neil H. Adelman and Arthur W. Friedman, of counsel), for *amicus curiae* Lake Forest College.

James B. Wilson, Aaron J. Kramer, and Beth B. Davis, of Schiff, Hardin & Waite, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chciago (Paul P. Biebel, Jr., Deputy State's Attorney, and Henry A. Hauser,

Arnold F. Block, and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In 1855 Northwestern University's corporate charter, granted in 1851, was amended to provide "That all property of whatever kind or description belonging to or owned by said corporation shall be forever free from taxation for any and all purposes." (1855 Ill. Laws 483, 484.) In earlier litigation (see *Northwestern University v. People ex rel. Miller,* 99 U.S. 309, 25 L. Ed. 387; *In re Assessment of Northwestern University,* 206 Ill. 64; *Northwestern University v. Hanberg,* 237 Ill. 185; and *People ex rel. County Collector v. Northwestern University,* 51 Ill. 2d 131) attacks on the exemption were rejected. These appeals arise out of the efforts of the taxing authorities of Cook County to assess and tax leasehold estates under the provisions of section 26 of the Revenue Act of 1939 (Ill. Rev. Stat. 1967, ch. 120, par. 507), which provides: "When real estate which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate."

In cause No. 48251, Nabisco, Inc., in count III of its fourth amended complaint, sought to enjoin defendants, the County of Cook, its assessor, county clerk and treasurer, from assessing, levying or collecting $38,074.82 in 1974 taxes upon its leasehold estate in two parcels of real estate leased by Nabisco from Northwestern under leases, the initial terms of which expire in 1977 and 1978. In its complaint Nabisco alleged that Northwestern was chartered by the State of Illinois in 1851; that the terms of its charter authorized it to sell or lease its property but

precluded it from holding more than 2,000 acres of land at one time, with the provision that any excess received by gift must be sold within 10 years; the 1855 amendment to the charter; that, as a result of decisions of this court and the United States Supreme Court construing its charter exemption, Northwestern has never paid taxes upon its real estate; that the university currently owns 434 acres of land, of which 71 are leased and the revenues used for educational purposes; that Nabisco's leases contain provisions authorizing the lessee to deduct from the rent paid Northwestern the amount of any taxes upon the real estate paid by the lessee, and that the aggregate amount lost to Northwestern if the tax here in question is sustained may be $1,000,000 or more; that by their terms many of Northwestern's leases terminate within 20 years or at the will of the lessees, and that renegotiation of those leases will result in a rental reduced by the amount of tax, approximating $1,000,000, which the lessees must pay upon their leasehold interests if the levy of such taxes is sustained; that the leasehold tax attempted to be assessed pursuant to section 26 violates the equal protection guarantees of the Federal and State constitutions in that application of the leasehold tax against lessees of tax-exempt property without a similar application against lessees of non-tax-exempt property is arbitrary and discriminatory; that section 26 violates the uniformity requirements of article IX, section 4, of the Illinois Constitution of 1970; and that plaintiff has no adequate remedy at law. Count III concluded with a prayer for an injunction against assessing or collecting the taxes, and that section 26 be declared unconstitutional.

Upon allowance of Nabisco's motion for preliminary injunction the circuit court enjoined defendants from assessing, levying or collecting any tax on the leaseholds for the year 1974 "during the pendency of this litigation." Defendants appealed (58 Ill. 2d R. 307) and we allowed

their motion to appeal directly to this court (58 Ill. 2d R. 302(b)).

In its complaint Pepsi-Cola General Bottlers, Inc., alleged that it was the lessee of real estate owned by Northwestern under a lease which "exclusive of option periods" expires in 1981; that the lease contained a clause reciting the tax-exempt status of the leased land and requiring lessee to pay as additional rent, in lieu of taxes, an amount agreed upon by the parties as representing the approximate amount which would be payable in taxes were the property not exempt; that such amount was to be recomputed at the end of the first 10 years and every four years thereafter; that the additional rent claimed by Northwestern for 1974 in lieu of taxes was $87,150; that it has never been required to pay any real estate or other type of property tax since 1956, the inception date of the lease, but has always paid additional rent in lieu of such taxes; that in October 1973 it received from the assessor a notice of assessed valuation of the improvements on the land in the amount of $662,297, and in August 1974 received the 1973 tax bill in the amount of $83,498.10. Further alleging that the tax violates Northwestern's charter exemption and sections 97 and 104 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, pars. 578 and 585) relating to publication, notice and an opportunity to be heard prior to an increase in assessed values, is fraudulently excessive because based on the value of Northwestern's improvements rather than plaintiff's leasehold, denies due process and equal protection, and that there exists no adequate remedy at law, the complaint concluded with a prayer for a temporary and permanent injunction against any attempt to collect the tax.

The circuit court issued a temporary restraining order enjoining defendants from attempting to collect the 1973 taxes pending the further order of the court. Upon subsequent allowance of defendants' motion to dismiss,

the circuit court dismissed the case but provided in its final order that the temporary injunction previously entered should remain in force pending disposition of the appeal. We allowed the joint motion of the parties for direct appeal (58 Ill. 2d R. 302(b)) and consolidated the cases for argument and opinion.

Although our earlier cases established that Northwestern's tax exemption constitutes a contract between the State and the University which cannot be impaired by subsequent legislation imposing taxes upon its property whether that property be directly used for school purposes or leased to others and the proceeds used for school purposes, we have not heretofore considered the question whether a property tax assessed to the lessees under section 26, upon the value of their leasehold estates in property owned by Northwestern, is a constitutionally impermissible impairment of the contract.

We consider first defendants' contention that plaintiffs are not third-party beneficiaries of the charter contract entered into between Northwestern and the State, and are therefore without standing to challenge the tax upon their leasehold estates as being an unconstitutional impairment of Northwestern's contract. We do not agree. Whether the leasehold estates are taxable depends upon the scope of the tax exemption granted in the charter, and the right to pass on to Northwestern as lessor the amount of any taxes which they are called upon to pay is in dispute. Under these circumstances plaintiffs clearly have standing to invoke the charter exemption as a ground for holding the tax invalid. *Mutual Tobacco Co. v. Halpin,* 414 Ill. 226, 229.

Nabisco contends that the exemption to Northwestern is in the nature of "a broad subsidy exemption" and that therefore *La Salle County Manufacturing Co. v. City of Ottawa,* 16 Ill. 418, *Chicago v. University of Chicago,* 302 Ill. 455, *Goodyear Tire and Rubber Co. v. Tierney,* 411 Ill.

421, *cert. denied*, 344 U.S. 825, 97 L. Ed. 642, 73 S. Ct. 24, and *People ex rel. Korzen v. American Airlines*, 39 Ill. 2d 11, which upheld the taxation of leasehold interests in land owned by governmental bodies are distinguishable. We do not agree. The leading case of *Jetton v. University of the South*, 208 U.S. 489, 52 L. Ed. 584, 28 S. Ct. 375, presented a factual situation similar to this case. The charter granted by the State of Tennessee authorized the University of the South to own 10,000 acres of land "one thousand of which, including buildings and other effects and property of said corporation, shall be exempt from taxation as long as said lands belong to said university." The university leased some of its exempt land and the county taxing official sought to tax the leasehold interest of one lessee, and announced the intent to tax "all lessees similarly situated." In holding the leasehold interest was not exempt from taxation, the Supreme Court stated the rule, as follows:

> "As long as different interests may exist in the same land, we think it plain that an exemption granted to the owner of the land in fee does not extend to an exemption from taxation of an interest in the same land, granted by the owner of the fee to another person as a lessee for a term of years. The two interests are totally distinct, and the exemption of one from taxation plainly does not thereby exempt the other." 208 U.S. 489, 500, 52 L. Ed. 584, 589, 28 S. Ct. 375, 377.

Plaintiffs argue that *Jetton* is distinguishable in that the purpose of Northwestern's charter tax exemption is to subsidize the university (see *People ex rel. County Collector v. Northwestern University*, 51 Ill. 2d 131), while the purpose of the charter tax exemption of 1,000 acres to the University of the South was "to protect said institution and the students thereof from the intrusion of evil-minded persons who may settle near said institution"

and to "maintain a buffer zone around the campus." They argue, too, that the taxation of the leasehold interest of the lessee of the University of the South "did not interfere with the purpose of the charter." The court did not rest its decision in *Jetton* on the ground that taxing the university's lessee would not interfere with the purpose of the charter. The rationale of the decision is that unless the consent of the legislature is given in clear and unmistakable terms the exemption of the fee from taxation does not serve to exempt the leasehold. Furthermore, the court treated the exemption as a "subsidy exemption" and rejected the argument which plaintiffs here advance, that the taxing of the leasehold interest diminished the university's income from the leased property and, therefore, impaired the exemption contract. The court said:

"If the university could lease its lands and could also effectually provide that the interest of the lessee in the land so leased should be exempt from taxation, it may readily be seen that the amount of rent which it would receive would be larger than if no such exemption could be obtained, but that is a matter which is wholly immaterial upon the question of the impairment of the contract of exemption that was really made. That contract cannot be extended simply because it would, as so construed, add value to the exemption. The language used does not include the exemption claimed." 208 U.S. 489, 501, 52 L. Ed. 584, 589, 28 S. Ct. 375, 378.

Plaintiffs argue that in *Wright v. Central of Georgia Ry. Co.*, 236 U.S. 674, 59 L. Ed. 781, 35 S. Ct. 471, and *Central of Georgia Ry. Co. v. Wright,* 248 U.S. 525, 63 L. Ed. 401, 39 S. Ct. 181, the Supreme Court did not follow *Jetton* and rejected efforts to diminish charter tax exemptions by subjecting leased property to an *ad valorem* tax assessed against the lessee as owner. It is not necessary to

detail the unique facts and statutes involved in the two *Central of Georgia* cases. The Supreme Court construed the Georgia statute to intend that the railroads to whom the charters were granted could derive their operating revenues "by doing the whole business, by letting in others to share a part of it, or by making a lease of the whole." (236 U.S. 674, 679, 59 L. Ed. 781, 784, 35 S. Ct. 471, 472.) In the second *Central of Georgia* case, which merely adopted the holding of the first case, the court referred to *Jetton* with approval and stated that it was not controlling because "of the exceptional facts and language that had to be considered" in the first case. In *Morris Canal & Banking Co. v. Baird,* 239 U.S. 126, 60 L. Ed. 177, 36 S. Ct. 28, the court stated that the holdings in the *Central of Georgia* cases were based upon the terms of the charters "which were interpreted as contemplating and permitting subsequent transfers without subjecting the fee to taxation." 239 U.S. 126, 132, 60 L. Ed. 177, 181, 36 S. Ct. 28, 30.

Plaintiffs also rely on *State Toll Highway Com. v. Korzen,* 32 Ill. 2d 338, wherein it was held that Standard Oil Company was exempt from the leasehold tax on property leased from the Commission and used in the operation of service stations and restaurants along the tollway. As in the *Central of Georgia* cases, based on the special facts and legislation, the court found that the General Assembly intended that such leasehold interest be exempt. The special facts were that the proximity of the facilities for gasoline, food and other necessities of travel promoted the objectives of limited access and safety of travel; that service stations and restaurants are an integral part of the toll road system, whether they be operated by the Commission or leased to a private corporation which may be better able to carry on the business, thus bringing about the desired result; that the General Assembly had given the Commission the authority to render this public service itself or to lease land to a private corporation to

render the public service and that the General Assembly could not have intended to make the first choice tax exempt and burden the second with a tax which would ultimately be borne by the Commission. The court said: "It is unnecessary to discuss individually the authorities cited by defendants. They are all distinguishable by the character of the lessees' operations. In each case the business conducted was of a purely private nature, having no connection with the public function performed by the body from which the land was leased." (32 Ill. 2d 338, 341-42. See also *Martin v. Borough of Collingswood* (1962), 36 N.J. 447, 177 A.2d 759.) We note too that in *People v. International Salt Co.*, 233 Ill. 223, the court held valid a tax on the lessee's interest in property owned by the Illinois Central Railroad, whose property, under its charter, was exempt from taxation.

We hold that Northwestern's charter tax exemption does not proscribe the taxing of plaintiffs' leasehold estates as real estate under section 26 of the Revenue Act of 1939. *Jetton v. University of the South,* 208 U.S. 489, 52 L. Ed. 584, 28 S. Ct. 375; *People v. International Salt Co.,* 233 Ill. 223.

Nabisco maintains that to impose the leasehold tax will violate its right to equal protection. It argues that it already pays Northwestern rent equal to a fair market rental, which includes an amount which but for the university's exemption it would pay as taxes, and that to require it to pay an additional amount as taxes on its leasehold would force it to pay more than a lessee of comparable taxable property. The validity of its argument is diminished by the fact that it alleges in its complaint that under the terms of its leases it is authorized to deduct from its rental payments the amount of any real estate taxes it may be required to pay on its leasehold interest. In *Trimble v. City of Seattle,* 231 U.S. 683, 58 L. Ed. 435, 34 S. Ct. 210, the Supreme Court held that there was no

violation of equal protection when a leasehold tax was assessed only against lessees of tax-exempt State land. The court said:

> "It is urged that to deny the state's obligation [not to tax its lessees] discriminates unconstitutionally against this class of lessees, since all others are free from the burden. But that is not true. Whether landlord or tenant shall pay a tax is a matter of private arrangement, and the practice one way or the other has no bearing on the matter. The argument from inequality really works the other way. If these leaseholds are not taxable, they are a favored class of property; for ordinarily leaseholds are taxed even if they are lumped and included in the value of the fee." 231 U.S. 683, 689-90, 58 L. Ed. 435, 438-39, 34 S. Ct. 218, 219.

As was stated in *Titus v. Texas Co.,* 55 Ill. 2d 437, 442, "differential treatment for purposes of taxation can withstand constitutional attack so long as the classifications are reasonable." We do not find that the distinction between lessees of tax exempt property and lessees of taxable property, whereby a tax on the leasehold is imposed on the former, results in an unreasonable classification.

In its *amicus* brief Northwestern contends that "The real issue in this case *** is whether Section 26 of the Revenue Act *** may be applied *** to tax a lessee for property which belongs not to the lessee but to the lessor, the owner of the fee." Simply stated, its position is that the lessees' interests may indeed be taxed, but that the only valuation, for assessment purposes, which may be placed on a leasehold estate is that which results in the appreciation of its value. In view of the conclusions reached we need not further consider its arguments.

In its *amicus curiae* brief Lake Forest College urges

that if we find the leasehold estates under consideration to be taxable, we make our ruling prospective in application and not retroactive as to existing leases. We have limited the retroactive effect of a decision to those situations where a change in the law would impose undue hardship upon those who had relied upon the prior law. (See, *e.g.,* *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill. 2d 11.) Where no change in prior Illinois law is effected by the decision we have refused to limit its retroactive application. (*Baier v. State Farm Insurance Co.,* 66 Ill. 2d 119.) Lake Forest, while conceding that the limiting of the retroactive effect of a decision has been confined to those cases in which a prior decision is overruled, argues that the "state of the law under which such leaseholds could in no way have fairly been foreseen as taxable prior to a decision of this court" requires a different result. We do not agree.

In the 1952 University of Illinois Law Forum, the following statement appears:

> "Another type of real estate that is assessable is created where the owner of land that is exempt because of ownership regardless of use leases it. This includes in addition to state and school land, land owned by many corporations created by special acts granting such exemption passed prior to our present Constitution. The best known of these are probably the Illinois Central Railroad and Northwestern University. Such leaseholds are assessable. [Ill. Rev. Stat., ch. 120, secs. 501(2), 507 (1951).] The few cases that have arisen seem to have caused little difficulty. [*See* Carrington v. People, 195 Ill. 484, 63 N.E. 163 (1902) (involving a leasehold of State-owned lands), and People v. International Salt Co., 233 Ill. 223, 84 N.E. 278 (1908) (involving a leasehold of Ill. Central R.R. right of way lands).]" (Footnotes in brackets.) (Gale, *Assessment and Collection of Taxes,* 1952 U. Ill. L.F. 192, 195. See also *Annot., Availability of Tax Exemption to Property Held on Lease from Exempt Owner,* 54 A.L.R.3d 402 (1973).)

The fact that Nabisco's leases provide for the deduction

from the rent of any taxes paid by the lessee and Pepsi-Cola's lease provides for rental in lieu of taxes leads us to conclude that both plaintiffs foresaw the strong possibility that their leasehold estates would be subjected to taxation under section 26 of the Revenue Act of 1939.

For the foregoing reasons, the judgment of the circuit court in cause No. 48313 is affirmed and the order of the circuit court of Cook County in cause No. 48251 is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

*48251 — Reversed and remanded.*
*48313 — Judgment affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.

MR. JUSTICE UNDERWOOD, dissenting:

Until the filing of the majority opinion in these consolidated cases this court had consistently maintained the integrity of the 1855 guarantee by the State of Illinois to Northwestern University "That all property of whatever kind or description belonging to or owned by said corporation shall be forever free from taxation for any and all purposes." (1855 Ill. Laws 483, sec. 4.) (*Northwestern University v. People ex rel. Miller* (1875), 80 Ill. 333, *rev'd* (1879), 99 U.S. 309, 25 L. Ed. 387; *In re Assessment of Northwestern University* (1903), 206 Ill. 64; *Northwestern University v. Hanberg* (1908), 237 Ill. 185; *People ex rel. County Collector v. Northwestern University* (1972), 51 Ill. 2d 131; *cert. denied* (1972), 409 U.S. 852, 34 L. Ed. 2d 95, 93 S. Ct. 65; *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1.) The net effect of today's opinion, as I understand it, is to nullify that exemption as to property owned by Northwestern and leased to others even though the income therefrom is used for educational purposes.

Northwestern's tax exemption is one of the few

remaining broad, subsidy-type exemptions possible only under our 1848 constitution. Its history was described in some detail in *People ex rel. County Collector v. Northwestern University* (1972), 51 Ill. 2d 131, 134-36:

"*** Viewed from today's perspective, the charter tax exemption of Northwestern University is highly unusual. But as of the date when the tax exemption was enacted as a means of inducing donations to the institution, the tax exemption was not at all unusual. The public interest in higher education was recognized in the early days of the State, but at that time the recognition took the form of special charters authorizing the incorporation of particular educational institutions. The charters contained tax exemptions, the terms of which varied, apparently in accordance with the inducement thought necessary to bring about contributions to establish and maintain the institutions. Some of the variations are set forth in this court's opinion in *People ex rel. Gill v. Lake Forest University* (1937), 367 Ill. 103.

Prior to the adoption of the constitution of 1870, a large number of corporate charters had been granted by the legislature to private educational institutions. There were more than 80 such charters which contained some provision for tax exemption. Only a relatively small number of these institutions have survived. ***

With the adoption of the constitution of 1870 the situation changed dramatically. That constitution prohibited the legislature from granting to any corporation any special privilege (art. IV, sec. 22), and with respect to exemption from taxation provided that such 'property as may be used exclusively for *** school *** purposes,

may be exempted from taxation; but such exemption shall be only by general law.' (Art. IX, sec. 3.) And by general law the legislature exempted only that property of schools which was used exclusively for school purposes, and not leased or otherwise used with a view to profit.

Educational institutions established subsequent to 1870 therefore do not enjoy the same kind of tax exemption that is enjoyed by Northwestern University. That fact, however, does not impair the validity of Northwestern's charter provision. As this court stated in 1908: 'The changed conditions with which the university is now surrounded cannot affect the meaning of the amendment passed in 1855. Doubtless the legislature did not foresee the enormous growth of the city of Chicago, the increase in the value of property, the growth in the wealth, and the work, the wants and necessities of the university. The university was not then regarded as an incubus on the community. Schools of higher learning were scarce, and the legislature which granted this exemption to Northwestern University granted to various other schools perpetual exemption from taxation of all the property they should ever acquire. (Private Laws of 1855, pp. 380, 384, 503, 511, 513.) Even now the legislature appropriates yearly for the University of Illinois, from money raised by taxation, sums vastly greater than those released to the Northwestern University through this exemption.' *Northwestern University v. Hanberg* (1908), 237 Ill. 185, 191-2."

Our earlier cases establish, as the majority concedes, that Northwestern's tax exemption constitutes a contract between the State and the university, the obligation of which cannot be impaired by subsequent legislation imposing

taxes upon its property, whether that property be directly and physically used for school purposes or leased to others and the proceeds of the leases used for those purposes. (*Miller; Hanberg; People ex rel. County Collector v. Northwestern University.*) In fact, this court's original interpretation narrowly limiting the scope of the exemption to that property used directly and physically for school purposes was reversed by the United States Supreme Court. (*Northwestern University v. People ex rel. Miller* (1875), 80 Ill. 333, *rev'd* (1879), 99 U.S. 309, 25 L. Ed. 387.) In its opinion the court stressed: "The purpose of a college or university is to give youth an education. The money which comes from the sale or rent of land dedicated to that object aids this purpose." (99 U.S. 309, 324, 25 L. Ed. 387, 390.) The court then held the leasing of its land to others did not destroy Northwestern's exemption.

In discussing the effect of the taxes here in question defendants concede that sustaining the tax will result in a reduction in Northwestern's income from its leased property by compelling the university, depending on the interpretation of its lease clauses, to reimburse its lessees for taxes paid, forgo its right to the additional rent it now receives in lieu of taxes, or accept a lower rental when its leases must be renegotiated. The allegations by plaintiffs and Northwestern that these immediate or ultimate losses of income resulting from imposition of the tax will exceed $1,000,000 are not contradicted.

It is important in the consideration of this case to note that the leasehold tax in question is a substantial one levied and computed under sections 20(2) and 26 of the Revenue Act. The former provides that "Each taxable leasehold estate shall be valued at its fair cash value." (Ill. Rev. Stat. 1973, ch. 120, par. 501(2).) In *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, this court considered the method to be used in computing

the fair cash value of a leasehold taxable under section 26. The tax had there been levied upon the leasehold interest of American in hangar facilities and a site at Chicago-owned O'Hare Airport. Since the property owned by the city was exempt, the airline contended its leasehold was exempt from the tax under the earlier opinion of this court in *Illinois State Toll Highway Com. v. Korzen* (1965), 32 Ill. 2d 338. This court held, however, that *Toll Highway* was not controlling since in that case the burden of the tax would have fallen upon the tax-exempt lessor in the form of reduced rentals whereas in *American Airlines* the likelihood of appreciably reduced rental income to the tax-exempt lessor was "extremely remote." (39 Ill. 2d 11, 15.) Consequently, the court held American's leasehold interest taxable. In determining the proper basis for valuing that interest the court expressly rejected the argument that the tax base should be the incremental value—the amount which a third party would be willing to pay the lessee, in addition to assuming the rental obligation, for an assignment of the lease. It is entirely clear from *American Airlines* (39 Ill. 2d 11, 18-19) and *Dee-El Garage* (53 Ill. 2d 1, 5) that the leasehold tax to be levied under sections 20 and 26 of the Revenue Act is not to be measured merely by incremental or potential profit value. Rather, the fair cash value of that leasehold is determined by multiplying the current rental value of the property by the present value of an annual payment of one dollar during the remaining term of the lease. While, obviously, the fair cash value upon which the tax is to be assessed will depend on the unexpired term of the lease, the very real nature of the resulting burden to the lessor emanating from reduced rentals is demonstrated by *American Airlines* and by the tax bills in this case.

Northwestern's lease with Pepsi-Cola expressly requires payment by the lessee of "tax-lieu rent"—an amount, agreed upon by the parties at four-year intervals,

representing the approximate amount which would be payable in taxes were the property not exempt. For 1974 the amount of "tax-lieu rent" claimed by Northwestern was $87,150. The tax bill received by Pepsi in August of that year, for 1973 taxes, was $83,498.10. Quite clearly demonstrated is the fact that taxation of this leasehold interest is, for all practical purposes, the equivalent of taxing Northwestern upon its exempt fee interest, thus, as to this leased property, effectively nullifying its exemption. The university will no longer receive "tax-lieu rent" from Pepsi-Cola, and Nabisco will deduct its taxes from rental payments. This subversion of Northwestern's exemption is, in my judgment, a clear impairment of its charter contract in violation of section 10 of article I of the Constitution of the United States.

In nullifying, as to leased property, the benefits of Northwestern's exemption the majority relies upon *Jetton v. University of the South* (1908), 208 U.S. 489, 52 L. Ed. 584, 28 S. Ct. 375. In that case the Supreme Court upheld a tax upon the leasehold interest of a lessee of land owned by the University of the South under a charter exempting that land from taxation "as long as said lands belong to said university." Such authority as *Jetton* might have been, however, was severely diluted by the later case of *Wright v. Central of Georgia Ry. Co.* (1915), 236 U.S. 674, 59 L. Ed. 781, 35 S. Ct. 471, in which the majority of that court struck down a tax upon the lessee of railroad property exempted by the State of Georgia from taxation. The diminution in *Jetton's* stature is further emphasized since the dissenting opinion in *Wright* relied upon it, and by the further fact that in *Central of Georgia Ry. Co. v. Wright* (1919), 248 U.S. 525, 527, 63 L. Ed. 401, 404, 39 S. Ct. 181 (the second Central of Georgia case), the court adhered to its original view, distinguishing *Jetton* as controlled by "exceptional facts and language." *People v. International Salt Co.* (1908), 233 Ill. 223, also relied

upon in the majority opinion, construes without discussion an earlier leasehold-taxing statute to permit a tax upon the leasehold interest in otherwise exempt property. That opinion contains no indication as to the manner in which the value of the lessee's interest was to be determined, and it may have been assessed upon an incremental value which the plaintiffs, Northwestern and I agree would be taxable here. Consequently, I do not regard *International Salt* as persuasive here. The majority also views the presence of tax-protection clauses in plaintiffs' leases as indicating their expectation of taxation of their leasehold interest, but the presence of such clauses seems to me only the normal action of any prudent lessee. And, in any event, the existence for more than a century of statutory provisions similar to section 26 (1853 Ill. Laws 39, sec. 5) without their application in the manner now attempted would seem to be some indication of the opinion of taxing authorities regarding their applicability to Northwestern's lessees.

In my judgment the other authorities cited by defendants and the majority are not persuasive, for they are largely concerned with either the "use" type of exemption incorporated in our 1870 constitution limiting the scope of an exemption to property used exclusively for the exempt purpose, or with "governmental" exemptions in which the exemption attaches only so long as the property is used by agencies of the government. In both of those instances, of course, a lease of the land for a nonexempt use violates the "exclusive use" requirement. The opinions which do not fall in either of these categories simply do not discuss the exemption issue.

Some leasehold interests in otherwise exempt property may, of course, be taxed separate and apart from the exempt fee, as *American Airlines* and our earlier opinions clearly establish. But those cases have not involved

exemptions of the character present here. The thrust of the earlier decisions by this court and the Supreme Court in the prior Northwestern cases has been that the university enjoys one of the few remaining broad exemptions from property taxation of a type possible only under our pre-1870 constitution. That exemption was originally granted by a young and growing State as part of its policy to encourage the establishment and maintenance by private persons of needed institutions of higher education. As a direct result Northwestern now receives from its leased properties and devotes to its educational purposes substantial amounts of additional rent approximating the amount of taxes which would be payable were it not for the charter exemption. Sustaining the leasehold tax on the lessee's interests in that property, as *American Airlines* holds the value of that interest must be computed, will significantly reduce Northwestern's rental income. Considering the fact that the leasehold tax, as assessed, closely parallels the amount of general real estate taxes collectible on nonexempt property, the practical result is to shift to Northwestern the burden of the tax in disregard of our *Toll Highway* decision. It is also apparent that in the situation Lake Forest finds itself—with the rent from the leased property only slightly more than the leasehold taxes—its exemption has virtually been converted to a "use" exemption so far as its value to the college is concerned—a result which the Supreme Court in *Miller* expressly precluded. Likewise the inevitable and significant reduction in rental income impairs Northwestern's charter contract in what I believe to be a violation of section 10 of article I of the Constitution of the United States. As Mr. Justice Holmes wrote in the first *Central of Georgia* case, "the protection of the lessee being necessary in order to make good that promised to the lessor" (236 U.S. 674, 680, 59 L. Ed. 781, 785, 35 S. Ct. 471, 472), I would hold

472

that the section 26 leasehold tax, as this court has held it must be computed, cannot be imposed upon the plaintiffs herein.

MR. JUSTICE RYAN joins in this dissent.